IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-cv-676-D

| | |
|---|---|
| ROGER M. WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court upon the parties' Motions for Judgment on the Pleadings. DE's-21 & 22. The time for filing any responses or replies has expired, and, therefore, the motions are now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), they have been referred to the undersigned for the entry of a Memorandum and Recommendation.

For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-21) be GRANTED, and that Defendant's Motion for Judgment on the Pleadings (DE-22) be DENIED. Specifically, it is RECOMMENDED that Defendant's final decision be vacated and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

**STATEMENT OF THE CASE**

Plaintiff protectively filed an application[1] for supplemental security income on March 25, 2010, alleging disability beginning March 25, 2009. Tr. 7. His claim was denied initially and upon reconsideration. *Id*. at 89-90. A hearing was held before an Administrative Law Judge ("ALJ") who determined that Plaintiff was not disabled in a decision dated August 16, 2011. *Id*. at 15-25. The Social Security Administration's Office of Disability Adjudication and Review denied Plaintiff's request for review on September 7, 2012, rendering the ALJ's determination as Defendant's final decision. *Id.* at 1-3. Plaintiff filed the instant action on October 22, 2012. DE-5.

**STANDARD OF REVIEW**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive….

42 U.S.C. § 405(g). "Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

---

[1] Prior to the application that is the subject of this case, Plaintiff protectively filed for supplemental security income on April 12, 2007, alleging disability beginning February 4, 2007. An ALJ entered a decision on January 22, 2010 finding that Plaintiff was not disabled. Tr. 58-67. That decision was not appealed, and is now the final decision of the Commissioner for that time period. *See* Tr. 33; *Aldridge v. Astrue*, 880 F. Supp. 2d 695, 697 (E.D.N.C. 2012).

"Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." *Craig*, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether Defendant has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *Sterling Smokeless Coal Co. v. Akers,* 131 F.3d 438, 439-440 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983). While the ALJ is not required to discuss each and every piece of evidence in the record, *Aytch v. Astrue*, 686 F. Supp. 2d 590, 598-99 (E.D.N.C. 2010), without a sufficient explanation of the weight given to obviously probative exhibits, it is not possible to determine if the ALJ's decision is supported by substantial evidence. *Arnold v. Secretary of Health, Ed. and Welfare*, 567 F.2d 258, 259 (4th Cir. 1977). Remand is therefore appropriate where an ALJ fails to discuss relevant evidence that weighs against his decision. *Ivey v. Barnhart*, 393 F. Supp. 2d 387, 390 (E.D.N.C. 2005) (citing *Murphy v. Bowen*, 810 F.2d 433, 438 (4th Cir. 1987)).

**SUMMARY OF THE RECORD**

The Social Security Administration has promulgated the following regulations establishing a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 416.920(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 416.920(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 416.920(d); 20 C.F.R. Part 404, subpart P, App. I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 416.920(f).

*Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). The ALJ followed the sequential evaluation in this case. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 25, 2010. Tr. 17. At step two, the ALJ found that Plaintiff had the following severe impairments: mood disorder, alcohol dependence, cannabis dependence, internal derangement of the left knee, hepatitis C, lumbar degenerative disc disease, and borderline IQ. *Id.* The ALJ then determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 17-18. Specifically, the ALJ found that Plaintiff did not satisfy Listing 12.05, paragraph C. *Id.* at 19. Next, the ALJ determined that Plaintiff had the residual functional

capacity ("RFC")[2] to perform light work, with some additional limitations. *Id*. Specifically, the ALJ found that Plaintiff:

> is capable of lifting, carrying, pushing, or pulling 20 pounds occasionally and 10 pounds frequently. The claimant can sit for six hours, and stand or walk for six hours in an eight-hour workday. However, the claimant is limited to only occasional balancing, stooping, and crouching, and no climbing, kneeling, or crawling. In addition, he can do work which only occasionally involves heights or dangerous machinery. Further, the claimant is limited to simple, routine, repetitive tasks, meaning he can apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form and deal with problems involving several concrete variables in or from standardized situations. The claimant is also limited to work involving only occasional contact with coworkers and supervisors, and no contact with the public. He is unable to work at jobs requiring complex decision making, constant change, or dealing with crisis situations.

*Id.* The ALJ then found that Plaintiff was unable to perform any past relevant work. *Id*. at 24. But based on the testimony of a vocational expert, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id*. at 24-25. Accordingly, the ALJ determined that Plaintiff had not been under a disability during the relevant time period. *Id*. at 25.

Plaintiff asserts that the ALJ erred in two central respects. First, Plaintiff argues that the ALJ erred in finding that his intellectual impairment did not meet or medically equal the requirements of Listing 12.05C. DE-21-1 at 7-8. Second, Plaintiff contends that substantial evidence does not support the ALJ's RFC determination. *Id.* at 8-10. For the reasons discussed below, Plaintiff's first contention has merit, and it is recommended that this matter be remanded for further consideration of Listing 12.05.

---

[2] An individual's RFC is what that person can still do despite physical and mental impairments. 20 C.F.R. § 416.945(a).

## ANALYSIS

### I. Substantial Evidence Does Not Support the ALJ's Determination that Plaintiff's Intellectual Impairment Did Not Meet or Medically Equal Listing 12.05C.

Plaintiff first argues that the ALJ did not appropriately assess whether Plaintiff met or medically equaled Listing 12.05C. DE-21-1 at 7-8. The "Listing of Impairments" details impairments that are "severe enough to prevent an individual from doing *any* gainful activity." 20 C.F.R. § 416.925(a). If a claimant's impairments meet all the criteria of a particular listing, 20 C.F.R. § 416.925(c)(3), or are medically equivalent to a listing, *Id.* § 416.926, this alone establishes that the claimant is disabled. *Id.* § 416.920(d). The claimant has the burden of demonstrating that his impairments meet or medically equal a listed impairment. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981); *see also Hancock v. Astrue*, 667 F.3d 470, 476 (4th Cir. 2012). Listing 12.05 sets forth a two-part inquiry for determining intellectual disability:[3] first, a claimant must satisfy the diagnostic description of the impairment, and second, a claimant must meet the required severity level, which may be accomplished by satisfying any one of four categories labeled A through D. Specifically, the Listing provides that:

> Intellectual disability refers to a significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied . . .

---

[3] Effective August 1, 2013, the Social Security Administration promulgated a final rule replacing the term "mental retardation" with "intellectual disability." *See* Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46,499 (Aug. 1, 2013). The Listing otherwise remains unchanged, and though earlier cases and the ALJ's decision use the now-outdated terminology, the same underlying diagnostic criteria still apply. This Memorandum uses the terms interchangeably rather than substituting the new term when referencing prior case law.

6

> C. A valid verbal, performance, or full scale[4] IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. pt. 404, Subpart P, App. 1, § 12.05. Where, as here, the paragraph C severity criteria are at issue, the Fourth Circuit has described the first showing as "Prong 1" and the conjunctive paragraph C requirements as "Prong 2" and "Prong 3." *Hancock*, 667 F.3d at 473. The Prong 1 diagnostic criteria for an intellectual disability includes two components—deficits in adaptive functioning and an onset before age 22—that must both be satisfied in order for the Listing to apply. *Id.* at 475 (commenting that an ALJ's finding that neither component was satisfied would be upheld if "[e]ither finding alone" was supported by substantial evidence).

As to Prong 1, adaptive functioning deficits, as defined by the American Psychiatric Association,[5] "can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." *Jackson v. Astrue*, 467 F. App'x 214, 218 (4th Cir. 2012) (citing *Atkins v. Virginia*, 536 U.S. 304, 309 n. 3 (2002)); AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 41 (4th ed. 2000) (hereinafter "DSM-IV"). But Listing 12.05C "makes it clear that mental retardation is a life-long, and not

---

[4] The Wechsler Adult Intelligence Scale provides verbal, performance, and full scale IQ scores, and the SSA uses the lowest of the three scores when analyzing Listing 12.05. 20 C.F.R. Part 404, Subpart P, App.1, § 12.00D(6)(c); *see also Rainey v. Heckler*, 770 F.2d 408, 410 (4th Cir. 1985).

[5] Though Listing 12.05 does not specifically define "adaptive functioning," SSA regulations provide that "[t]he definition of [mental retardation] ... in [the] listings is consistent with, if not identical to, the definitions of [mental retardation] used by the leading professional organizations." Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20,018–01, at 20,022 (Apr. 24, 2002). Because "the SSA declined to adopt any one of [these] specific definitions . . . the introductory paragraph of Listing 12.05 can be met if the individual is found to have, inter alia, deficits in adaptive functioning as defined by any of the four professional organizations." *Durden v. Astrue*, 586 F. Supp. 2d 828, 834 (S.D. Tex. 2008).

acquired, disability." *Smith v. Barnhart*, No. 6:04-cv-34, 2005 WL 823751, at *4 (W.D. Va. Apr. 8, 2005). Accordingly, "[e]ven if the record clearly establishes that the plaintiff meets the requirements of section 12.05(C), a finding of mental retardation cannot be warranted without a finding that the plaintiff manifested deficits in adaptive function *before age 22*." *Justice v. Barnhart*, 431 F. Supp. 2d 617, 619 (W.D. Va. 2006) (citing *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006)) (emphasis added).

As to Prong 2—a valid IQ score—"[a]n ALJ has the discretion to assess the validity of an IQ test result and is not required to accept it even if it is the only such result in the record." *Hancock*, 667 F.3d at 474. If the score is "inconsistent with the remainder of evidence in the record on the claimant's daily activities and behavior, it need not be conclusive proof of mental retardation." *Powell v. Barnhart*, No. 6:04-cv-63, 2005 WL 1926613, at *4 (W.D. Va. Aug. 9, 2005) (citing *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986)). Nonetheless, in the absence of evidence that a claimant's IQ has changed over the years, a court may presume that the claimant's IQ has remained constant throughout his or her life. *Luckey v. U.S. Dept. of Health and Human Services*, 890 F.2d 666, 668–69 (4th Cir. 1989); *Shoulars v. Astrue*, 671 F. Supp. 2d 801, 814 (E.D.N.C. 2009). An ALJ's assessment of an IQ score must, however, be supported by substantial evidence. *Watson v. Astrue*, No. CBD-11-2491, 2013 WL 136425, at *3-4 (D. Md. Jan. 9, 2013).

Finally, to qualify as a "significant work-related limitation" under Prong 3, the required physical or mental impairment "need not be disabling in and of itself." *Branham v. Heckler*, 775 F.2d 1271, 1273 (4th Cir. 1985). This requirement is therefore met when, as here, the ALJ has found that a claimant has other severe impairments. *See* Tr. 17; *Luckey*, 890 F.2d at 669; *Watson*,

8

2013 WL 136425, at *8; 20 C.F.R. pt. 404, Subpart P, App. 1, § 12.00A (describing "significantly limits" as, "i.e., is a 'severe' impairment(s), as defined in [§ 416.920(c)]").

The ALJ did not address Prong 1—the diagnostic criteria—at the outset of his analysis. Rather, he first considered the paragraph "D" severity requirements—during his analysis of the related "paragraph B" criteria of claimant's mood disorder and substance addiction impairments—and found that those requirements were not satisfied.[6] Tr. 18. The ALJ then found as follows:

> Turning back to listing 12.05 the . . . [paragraph A] requirements are not met because the claimant is not dependent upon others for personal needs and is able to follow directions (Exhibit B2E).
>
> As for the "paragraph B" criteria, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 59 or less. The record shows the claimant's full scale IQ is 64 (Exhibit 17F).
>
> Finally, the "paragraph C" criteria … are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. Even though the claimant has a full scale IQ of 64, the record does not show that the claimant had such a low IQ prior to age 22 or that there were deficits in adaptive functioning. His history of substance abuse has contributed to his cognitive decline.

Tr. 19. The ALJ cited no record evidence in support of his paragraph C conclusion. Plaintiff does not contest the ALJ's findings as to paragraphs A, B, or D, but asserts that the ALJ erred in finding that Listing 12.05C was not applicable. DE-21-1 at 7. Specifically, Plaintiff argues that

---

[6] In evaluating the severity of mental impairments, the ALJ is required to apply the "special technique" set forward in 20 C.F.R. § 416.920a. This technique requires the ALJ to consider and rate the claimant's limitations in four functional areas: (1) activities of daily living, (2) social functioning, (3) concentration, persistence, or pace, and (4) episodes of decompensation. *Id.* § 416.920a(c)(3). These criteria are generally set forward in paragraph B of the listings, but "[t]he structure of [Listing 12.05] is different from that of the other mental disorders listings," and "paragraph D contains the same functional criteria that are required under paragraph B of the other mental disorders listings." 20 C.F.R. pt. 404, Subpart P, App. 1, § 12.00A.

9

his educational history, IQ test results, and additional impairments satisfy the requirements of Listing 12.05C. *Id.*

### A. The 2010 ALJ Determination Does Not Preclude Plaintiff's Listing 12.05 Argument.

A threshold consideration is the effect of the prior ALJ's decision on Plaintiff's Listing 12.05C argument. Within the Fourth Circuit, though an ALJ should consider prior ALJ determinations as evidence, a prior decision is only determinative as to the time period it covers – i.e., from the alleged onset date to the decision date. *See Albright v. Comm'r of Soc. Sec.*, 174 F.3d 473, 475-78 (4th Cir. 1999); Social Security Acquiescence Ruling 00-1(4), 65 Fed. Reg. 1936, 2000 WL 43774 (Jan. 12, 2000).[7] Such decisions do not, however, have preclusive effect on a subsequent claim for benefits, because—in many cases—impairments can improve or worsen with time. *Albright*, 174 F.3d at 476 (recognizing "the reality that the mere passage of time often has a deleterious effect on a claimant's physical or mental condition").

As discussed above, however, intellectual disability is "a life-long" impairment. *Smith*, 2005 WL 823751, at *4. By the terms of the Listing, it only applies where "the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. pt. 404, Subpart P, App. 1, § 12.05. Accordingly, if a claimant is more than 22 years old, it is implausible that any material change affecting that diagnosis could occur following a prior ALJ determination that the claimant's impairment did not meet Listing 12.05. *See, e.g.*, *Taylor v. Astrue*, Civ. No. 11-0139-

---

[7] The ALJ should consider "(1) whether the fact on which the prior finding was based is subject to change with passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim." *Id.*

10

N, 2011 WL 6093300, at *3 (S.D. Ala. Dec. 7, 2011) ("[W]ith respect to an impairment such as mental retardation which does not wax and wane with the passage of time, the [logic underpinning a prior Eleventh Circuit decision holding that prior ALJ findings are "irrelevant" to the period of time at issue in a subsequent application for benefits] does not clearly apply."). Nonetheless, *Albright* stresses that Fourth Circuit precedent regarding the effect of prior ALJ decisions relies not upon principles of claim preclusion, but upon the substantial evidence rule. *Id.* at 477-78. In short, even assuming that a condition could not be affected by the passage of time, a prior ALJ decision is not automatically preclusive but is merely probative. *See Aldridge*, 880 F. Supp. 2d at 700.

The relevant question is therefore whether the 2010 ALJ decision finding that Plaintiff was not disabled constitutes substantial evidence in support of the current ALJ's finding that Plaintiff did not meet the requirements of Listing 12.05. The answer here is no, for two reasons. First, the 2010 decision, while addressing Plaintiff's IQ testing and the opinions of multiple consultative examiners, does so in the context of the RFC assessment: that ALJ at no point considers whether Plaintiff met the requirements of Listing 12.05. Tr. 61-66; *see also Holtsclaw v. Astrue*, No. 1:10-cv-199, 2011 WL 6935499, at *6 (W.D.N.C. Dec. 30, 2011) (ALJ's prior decision did not constitute substantial evidence where prior decision did not address whether claimant met Listing 12.05 criteria). Secondly, the ALJ here does not rely upon the 2010 decision in his discussion of Listing 12.05. *See* Tr. 19. Even though the ALJ is not required to explicitly state the weight given to a prior decision, *Melvin v. Astrue*, 602 F. Supp. 2d 694, 703-05 (E.D.N.C. 2009), the ALJ must properly articulate his findings in order to allow for meaningful judicial review. The ALJ did not do so here. Without more explicit reliance and

11

explanation, the 2010 ALJ decision does not provide substantial evidence in support of the ALJ's findings with respect to Listing 12.05C. *See Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must, however, affirm the ALJ's decision only upon the reasons he gave."). As discussed below, the ALJ's failure to properly articulate his findings, correctly apply the legal standard, or cite supporting evidence, warrants remand for further consideration of Listing 12.05. *See, e.g.*, *Smith v. Heckler*, 782 F.2d 1176, 1181 (4th Cir. 1986) (an ALJ is free to discount or reject evidence that he considers—but if he does, he must "say so and . . . explain why").

### B. The ALJ Failed to Properly Address Prong 1, Adequately Explain His Decision, and Cite Supporting Evidence.

The ALJ's decision with respect to Listing 12.05C is flawed in several respects. First, the ALJ's analysis conflates the paragraph C severity determination with the threshold "Prong 1" issue of whether Plaintiff meets the diagnostic criteria for the impairment. *See* Tr. 19. Although the ALJ recites the Prong 1 criteria in explaining why he found that paragraph C was not satisfied, it is unclear from the decision whether the ALJ independently applied Prong 1. Remand would be warranted on this basis alone. *Wynne ex rel. Pennell v. Astrue*, No. 5:09-cv-367, 2010 WL 2402843, at *5 (E.D.N.C. May 21, 2010) (recommending remand where it was "unclear whether the ALJ actually engaged in the first step of the mental retardation listing analysis"); *Ragland v. Astrue*, No. 5:08-CV-152, 2009 WL 1904530, at *6 (Jul. 1, 2009) (remand appropriate where first step of Listing 12.05 analysis was "subsumed into an analysis of whether Claimant satisfied one of the four requirements in the second step of the analysis"); *Hansen v. Astrue,* No. 4:07-CV-24-WW, Slip Op. at 7 (E.D.N.C. Nov. 2, 2007) (recommending remand because the ALJ did not specifically address the first step in Rule 12.05 process).

The ALJ also fails to explain his reasoning and cite supporting evidence in his application

12

of Listing 12.05C. *See DeLoatche*, 715 F.2d at 150. The ALJ summarily concludes that: (1) "the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function," (2) "the record does not show that the claimant had such a low IQ prior to age 22 or that there were deficits in adaptive functioning," and (3) claimant's "history of substance abuse has contributed to his cognitive decline." Tr. 19. This constitutes the whole of the ALJ's analysis: he cites no evidence and provides no further elucidation of his reasoning.

As to his first conclusion, because the ALJ collapsed Prong 1 into his analysis of paragraph C, it is not apparent whether the ALJ's language is a mere recitation of the standard, or whether he ultimately concluded that Prong 2 and Prong 3 were not met. The record demonstrates that Plaintiff had a 2003 IQ scores of 62 (Verbal); 73 (Performance), and 64 (Full Scale), Tr. 440-42, and the ALJ did not question the validity of this score. *Id.* at 19, 21; *see also* Tr. 442 (evaluator opined that the "obtained IQ appears accurate at this time"). Furthermore, it is undisputed that Plaintiff has other severe impairments and therefore satisfies Prong 3. Tr. 17. Accordingly, to the extent the ALJ based his decision upon a finding that Plaintiff failed to satisfy either Prong 2 or Prong 3, substantial evidence does not support his conclusion.[8] *Jackson*, 467 F. App'x at 217.

As to his second conclusion, the ALJ cites no evidence to support his contention that the record "does not show" that claimant had either a low IQ prior to age 22 or deficits in adaptive functioning. The ALJ wholly fails to address any of the categories of adaptive functioning

---

[8] The ALJ also erred in relying upon the full scale score of 64 rather than the lower verbal score of 62, *see* 20 C.F.R. Part 404, Subpart P, App.1, § 12.00D(6)(c), but considering the small differential between those numbers and the fact that both fall within the Listing 12.05C definition, the undersigned concludes that this error is harmless.

13

deficits, merely summarily concluding that Plaintiff had none. Tr. 19; *see Wynne*, 2010 WL 2402843, at *5-6 (recommending remand where "there is no other indication that the ALJ considered whether Claimant exhibited deficits in adaptive functioning during his formative years"). But there is ample evidence in the record that Plaintiff had deficits in functional academic skills. Plaintiff only completed through the sixth grade in school, repeated the third and fourth grades, and reported (albeit inconsistently) that he attended special education classes. *See* Tr. 231, 336, 440-41, 445. Such history constitutes evidence that deficits in adaptive functioning manifested before age 22. *Radford v. Astrue*, No. 5:08-cv-421, 2009 WL 1675958, at *5 (E.D.N.C. Jun. 10, 2009) (finding evidence of deficits in adaptive functioning where claimant participated in special education classes and had not worked for more than ten years) (citing *Maresh v. Barnhart*, 438 F.3d 897, 900 (8th Cir. 2006) (fact that claimant attended special education classes, struggled with reading, writing and math, and dropped out of school in the ninth grade constituted evidence of mental retardation prior to age 22)); *Wynne*, 2010 WL 2402843, at *5 (deficits in adaptive functioning in functional academic skills area shown where claimant "received a seventh grade education only and repeated both third and sixth grades"). Despite this evidence, the ALJ at no point discusses Plaintiff's educational record in his decision.[9] *Cf. Ivey*, 393 F. Supp. 2d at 390 (remand is appropriate where ALJ fails to discuss relevant evidence that weighs against his opinion).

The record contains evidence of other types of adaptive functioning deficits as well. Following an April 2008 psychological evaluation for the state disability determination services,

---

[9] The sole reference to Plaintiff's educational history is in the ALJ's rote application of 20 C.F.R. § 416.964, concluding that Plaintiff had a "marginal education." Tr. 24.

14

Gary Bachara, Ph.D. noted that Plaintiff's "social skills are questionable," Plaintiff had "been fired from various jobs," Plaintiff had questionable compliance with medication despite the fact that had several prescriptions, and that he "has no friends, does not date, does not go to church." Tr. 445-46. These facts could certainly constitute evidence of deficits in "social/interpersonal skills" and "self-care." *Cf. Jackson*, 467 F. App'x at 218. Although the ALJ was not required to credit this evidence, his failure to articulate the reasoning behind his finding that "the record does not show … that there were deficits in adaptive functioning," Tr. 19, warrants remand. *See Conyers v. Astrue*, No. 4:11-CV-37, 2012 WL 3282329, at *9 (E.D.N.C. Jun. 29, 2012) (recommending remand for failure to explain reasons while "recogniz[ing] that the ALJ may have simply chosen to credit other evidence in the record with regard to Claimant's level of adaptive functioning"); *Radford,* 2009 WL 1675958, at *6-7 (remanding where ALJ "failed to properly articulate his findings" regarding Plaintiff's deficits in adaptive functioning). "It may be, of course . . . that the ALJ considered all of these factors and proposed to himself cogent reasons for disregarding them. However, on this record [I] cannot so determine." *DeLoatche*, 715 F.2d at 150; *see also Covington v. Colvin*, No. 5:12-CV-378, 2013 WL 3879909, at *5-6 (E.D.N.C. Jul 26, 2013) (remanding where ALJ failed to make factual findings regarding evidence pertaining to claimant's IQ scores, and failed to explain the weight given to such evidence).

      The ALJ does explain his opinion of Plaintiff's intellectual functioning more thoroughly during the RFC assessment. Citing Dr. Bachara's conclusion that Plaintiff could follow directions and perform simple, repetitive tasks, the ALJ noted that Plaintiff had been able to work in the past and had basic reading and math skills. *Id.* at 21-22. Although the analysis during

15

the RFC assessment may illuminate the ALJ's thinking with respect to the Listings, it is not a substitute for adequately explaining his reasoning at step three of the sequential analysis. *Weeks v. Astrue*, No. 5:11-cv-169, 2012 WL 2133446, at *10 (E.D.N.C. May 23, 2012) (ALJ's findings regarding Listing 12.05C were not supported by substantial evidence where the ALJ only acknowledged claimant's history of special education in the RFC section and "the court [was] unable to determine whether the ALJ considered it as part of her determination [regarding deficits in adaptive functioning]"). The RFC determination and the question of whether a claimant meets the diagnostic criteria embodied in the Listings are distinct, rather than fungible, inquiries.

Two illustrations of this principle are evident in the ALJ's discussion of Plaintiff's RFC. First, the ALJ notes in his RFC assessment that he gave "little weight to the opinion of Mr. Radson, that the claimant may have difficulty relating to others in a work setting or tolerating the stress and pressures associated with a typical workday, given his low IQ, as it appears the claimant did not have an issue with this before his alleged onset date." Tr. 24.[10] But the ALJ also endorses Mr. Radson's opinion in other respects, stating that "due to the claimant's [other mental impairments] *and mild mental retardation*, he is unable to work at jobs requiring complex decision making, constant change, or dealing with crisis situations." and commenting that "the record shows that claimant *has been diagnosed with mild mental retardation*." Tr. 21-23 (emphasis added).[11] The diagnosis of mild mental retardation "presumes onset of the condition

---

[10] This explanation seems at odds with the ALJ's own RFC determination that Plaintiff should be "limited to work involving only occasional contact with coworkers and supervisors, and no contact with the public." Tr. 22.

[11] The ALJ's determination as to Plaintiff's diagnosis is internally inconsistent. In the passage quoted above, the ALJ apparently accepted Mr. Radson's diagnosis, despite Dr. Bachara's conclusion that Plaintiff's

16

during the developmental period," *McNeill v. Astrue*, No. 5:11-cv-546, 2013 WL 865621, at *7 (E.D.N.C. Feb. 20, 2013), *adopted by McNeill v. Astrue,* No. 5:11-cv-546, 2013 WL 866070 (Mar. 7, 2013), and the ALJ's findings in this regard are at odds with his conclusion that Listing 12.05 did not apply. *See id.* (citing *Durham v. Apfel*, 34 F. Supp. 2d 1373, 1381 (N.D. Ga. 1998) (commenting upon discrepancy between ALJ's determination that claimant did not satisfy the diagnostic definition of Listing 12.05 and his acceptance of the mild mental retardation diagnosis by two psychologists)).

Secondly, the ALJ's description of Plaintiff's RFC is not necessarily inconsistent with a diagnosis of intellectual disability meeting Listing 12.05. *See Radford*, 2009 WL 1675958, at *6 (citing *Grenham v. Astrue*, No. 08-cv-11151-LTS, 2009 WL 1209026, at *5 (D. Mass. May 4, 2009) ("A person with mild mental retardation may be able to maintain a household, care for children, and obtain a GED or may have been enrolled in regular, as opposed to special education, classes, and may be able to read and write without difficulty."); *Muntzert v. Astrue*, 502 F. Supp. 2d 1148, 1158 (D. Kan. 2007) (adopting holding that Listing 12.05C "implies that [an intellectually disabled] individual will be able to work unless he has, or until he develops, a severe physical or additional mental impairment. Therefore, the fact that [he] has a history of continuous employment in the past is irrelevant to whether he has subsequently become disabled due to the development of additional severe impairments."). Because this Court cannot speculate as to how the ALJ would resolve these inconsistencies in a proper application of Listing 12.05C,

---

intelligence was "in the low average range." Tr. 445. But at step two of the decision, the ALJ concluded that Plaintiff's severe impairment was borderline IQ, Tr. 17, which the American Psychiatric Association defines as less severe than mental retardation. *See* DSM-IV at 48. Without further explanation, which diagnosis the ALJ ultimately credited is unclear.

17

it will not impute the ALJ's RFC conclusions to his Listing 12.05C analysis. *Hays*, 907 F.2d at 1456 ("[I]t is not the role of the court, or the defendant on judicial review of the administrative decision, to substitute its judgment in place of the ALJ.").

Finally, with respect to the ALJ's third conclusion, he speculates that Plaintiff's "history of substance abuse has contributed to his cognitive decline." *Id*. at 19. Yet no doctor, consulting psychologist, or other medical professional in the current record expressed this opinion.[12] *Grenham*, 2009 WL 1209026, at *5 (criticizing similar ALJ conclusion and commenting that "[n]o medical source stated that [claimant's] IQ, or his cognitive functioning in general, had been diminished by his substance abuse and the ALJ cited none"). "The ALJ is not a medical doctor . . . and is therefore not qualified to determine whether someone's functional limitations and IQ scores are the product of alcohol or drug usage without some competent evidence or more thorough explanation." *Mathious v. Barnhart*, 490 F. Supp. 2d 833, 847 & n. 14 (E.D. Mich. 2007); *see also Williams v. Astrue*, 692 F. Supp. 2d 1331, 1338–39 (N.D. Fla. 2010) (ALJ's determination that claimant's low IQ scores "could be" the result of other factors, including her drug and alcohol use, was pure speculation, and ALJ erred by arbitrarily substituting his own hunch or intuition for the diagnosis of a medical professional); *Holmes v. Apfel*, No. 98-C-5087, 1999 WL 731769, at *5 (N.D. Ill. Aug. 31, 1999) (remanding for specific findings regarding the effect of claimant's drug and alcohol abuse). Moreover, the ALJ's conjecture regarding the

---

[12] *Cf. Shoulars*, 671 F. Supp. 2d at 812-15 (medical expert testified at hearing that claimant did not meet Listing despite IQ score of 65 because "without the alcohol his functionality would be significantly higher," and opined that school records would be useful in determining whether claimant's intellectual disability had an early onset or was "consequential of the longstanding alcohol that he's had," and ALJ gave claimant opportunity to produce school records); *Bennett v. Colvin*, No. 4:12-CV-152, 2013 WL 4417605, at *3 (E.D.N.C. Aug. 15, 2013) (consulting non-examining psychologist "found that despite claimant's low IQ scores, his adaptive skills were too high to meet Listing 12.05").

18

impact of drug and alcohol abuse on Plaintiff's cognitive functioning does not preclude a finding that the impairment manifested before age 22, as Plaintiff reported cannabis abuse since age 10 and alcohol abuse since age 16, Tr. 249. In sum, the ALJ's conclusion in this regard was also in error.

Because the ALJ failed to adequately explain his findings and address relevant evidence with regard to Listing 12.05C, and failed to correctly apply the Listing 12.05 diagnostic criteria (i.e., Prong 1), this matter must be remanded to allow the ALJ to make such findings and explain them in his decision. *See Murphy v. Bowen*, 810 F.2d at 437; *McNeill*, 2013 WL 865621, at * 4 (recommending remand because "the ALJ failed to adequately explain his ruling on Listing 12.05C"). On remand, the ALJ should perform the required analysis pursuant to Listing 12.05 and explain on the record how the evidence as a whole supports the decision.

## II. The ALJ's RFC Determination Was Supported By Substantial Evidence.

Plaintiff additionally objects to the ALJ's RFC determination, arguing that "[t]he evidence supports a finding that Mr. Williams is unable to perform work on a sustained and continuous basis." DE-21-1 at 10. Plaintiff does not, however, list any specific errors on the part of the ALJ, nor does Plaintiff point to any supporting evidence other than his testimony at the hearing. *See id.*; *cf. Mecimore v. Astrue*, No. 5:10-cv-64, 2010 WL 7281096, at *6 (W.D.N.C. Dec. 10, 2010) ("Plaintiff has not adduced any evidence that she experiences greater limitations than those assessed by the ALJ"). Thus, this argument essentially boils down to the contention that the ALJ incorrectly weighed the evidence before him and failed to accept Plaintiff's testimony. Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting

19

evidence, make credibility determinations, or substitute its judgment for that of the Secretary. *Craig*, 76 F.3d at 589; *see also Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) ("[B]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight."). Because that is what Plaintiff requests this Court do, his argument is without merit. The ALJ applied the correct legal standard with respect to his determination of Plaintiff's RFC, and substantial evidence supports his conclusion. The sole determination upon remand, therefore, is whether Plaintiff meets the criteria of Listing 12.05C such that the sequential analysis does not proceed beyond the third step.

**CONCLUSION**

For the aforementioned reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-21) be GRANTED, that Defendant's Motion for Judgment on the Pleadings (DE-22) be DENIED. Specifically, it is RECOMMENDED that Defendant's final decision be vacated and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the foregoing directives.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Thursday, October 17, 2013.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE